UNITED STATES of America, Appellee,

v.

Gerald R. SHOWERMAN,
Defendant–Appellant.

No. 156, Docket 95–1067.

United States Court of Appeals,
Second Circuit.

Submitted Sept. 7, 1995.

Decided Oct. 30, 1995.

Thomas J. Maroney, United States Attorney for the Northern District of New York, Albany, New York (Kimberly M. Zimmer, Assistant United States Attorney, Albany, New York, of counsel), for Appellee.

E. Stewart Jones, Troy, New York (Peter J. Moschetti, Troy, New York, of counsel), for Defendant–Appellant.

Before: KEARSE, JACOBS, and LEVAL, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Gerald R. Showerman appeals from a judgment entered in the United States District Court for the Northern District of New York following his plea of guilty before Frederick J. Scullin, Jr., *Judge*, convicting him of conspiring to interfere with commerce by threat of violence, in violation of 18 U.S.C. § 1951 (1988) ("Hobbs Act"), and using a firearm in the commission of a crime of violence, in violation of 18 U.S.C.

§ 924(c)(1) (1988). Showerman was sentenced principally to 91 months' imprisonment, to be followed by a three-year term of supervised release, and was ordered to pay restitution of $129,765.91. On appeal, he contends that the order of restitution should be vacated because the district court, in accepting his plea, failed to inform him, and to ensure that he understood, that his sentence could include an order to pay restitution. For the reasons that follow, we conditionally vacate the judgment and remand for further proceedings.

## I. BACKGROUND

In January 1994, Showerman was charged in a nine-count indictment with various crimes in connection with theft from an interstate shipment of property. On May 10, 1994, he entered into a nine-page, 18–paragraph plea-and-cooperation agreement with the government ("Plea Agreement" or "Agreement"), pursuant to which he was to plead guilty to the above Hobbs Act charge (count 2) and firearm charge (count 7), and the government agreed to dismiss the remaining counts. The Agreement described Showerman's possible sentence as follows:

2. The Defendant and the United States understand and agree (a) that the Court may impose any lawful sentence upon the Defendant for the crime for which the plea of guilty will be entered; ... and (c) that the *maximum* lawful sentence which the Court could impose upon the Defendant for Count Two may include a term of imprisonment not to exceed twenty (20) years and a fine of not more than $250,000, or both, a five (5) year term of supervised release and a $50.00 mandatory special assessment and the *maximum* sentence which the Court could impose upon the Defendant for Count Seven will include a five (5) year term of imprisonment imposed consecutively to the term of imprisonment imposed on Count Two, and may include a fine of not more than $250,-000, or both, a three (3) year term of supervised release and a $50.00 mandatory special assessment.

(Plea Agreement ¶ 2 (emphasis in original).) Paragraph 8 of the Agreement stated that

"[t]he Defendant ... agrees to make full restitution, jointly and severally with any other individual and/or entity ordered to make restitution, to the individuals and/or entities who suffered a loss in the amount of the loss incurred in connection with his conduct." Paragraph 5 of the Agreement stated that Showerman acknowledged that the sentence to be imposed was within the sole discretion of the court and that the government could not make any promises as to what sentence he would receive.

On the same day, Showerman pleaded guilty to the Hobbs Act count and the firearm count. At the plea hearing, the district court sought to ensure that a plea of guilty by Showerman would be voluntary and that he understood its possible consequences. The court ascertained that Showerman had reviewed the Plea Agreement, and the court asked the Assistant United States Attorney ("AUSA") to summarize the Agreement's "essential elements":

THE COURT: The Court notes that you are represented by counsel, Mr. Moschetti. Are you satisfied with the representation and advice you've received?

THE DEFENDANT: Yes, sir.

THE COURT: Have you gone through the plea agreement in detail with your attorney?

THE DEFENDANT: Yes, sir.

THE COURT: Are you satisfied you understand the terms of that plea agreement?

THE DEFENDANT: Yes, sir.

THE COURT: Ms. Zimmer, could you summarize the essential elements of that plea agreement for the Court?

. . . .

MS. ZIMMER [AUSA]: ... [I]f I can summarize for the court, Count Two is conspiracy to commit theft from interstate shipment or robbery from interstate shipment. That count carries a maximum possible penalty of 20 years imprisonment, a $250,-000 fine, a five year term of supervised release, and a $50 special assessment.

Count Seven is a violation of 18 U.S.C. Section 924(c)(1). And that is the use and carrying of a firearm during and in rela-

tion to a crime of violence. That count carries a maximum possible penalty of five years imprisonment which is consecutive to any sentence which is imposed on Count Two. It also includes a $250,000 fine, three year term of supervised release, and again a $50 manditory [sic] special assessment.

THE COURT: Mr. Showerman, is that your understanding of the plea agreement as articulated by the Assistant United States Attorney?

THE DEFENDANT: Yes.

THE COURT: Mr. Moschetti, is that also your understanding?

MR. MOSCHETTI [Attorney for Showerman]: That is my understanding, Your Honor.

THE COURT: Is there anything further you wish to add?

MR. MOSCHETTI: I don't believe so.

. . . .

THE COURT: .... Mr. Showerman, let me review with you again the consequences of a plea here. You understand that if your plea is accepted, you will be adjudged guilty of those offenses the same as if there were a jury trial and a jury after hearing all the evidence in the case were to return a verdict of guilty as charged?

THE DEFENDANT: Yes, sir.

THE COURT: You also understand that an adjudication of guilt may deprive you of certain valuable civil rights, such as the right to vote, right to hold public office, the right to bear arms, and the right to serve on a jury?

THE DEFENDANT: Yes, sir.

THE COURT: As articulated by the Assistant United States Attorney, Ms. Zimmer, you do face a possible additional punishment of up to 20 years for a plea to Count Two, a fine of up to $250,000, and a possible five year supervised release thereafter. And Count Seven, consecutive five-year term of incarceration, also a fine of up to $250,000 and a possible three-year term thereafter of supervised release. And you, of course, will be charged with the special assessment of $50 for pleading to each

count. You understand all of that to be the consequences of your plea here?

THE DEFENDANT: Yes.

(Plea Hearing Transcript, May 10, 1994, at 5–9.) It is undisputed that at the plea hearing, there was no mention of restitution.

The presentence report ("PSR") prepared thereafter noted, *inter alia,* that Showerman had "agree[d] to be held jointly and severely [*sic* ] responsible for full restitution to any individuals and/or entities who suffered a loss incurred in connection with his conduct." It also stated that "one of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service, pursuant to 18 U.S.C. § 3563(a)(2)." And in a section entitled *"Restitution "* (underlining in original), the PSR stated that "[p]ursuant to 18 U.S.C. § 3663, restitution may be ordered in this case," and that "[i]n accordance with the provisions of U.S.S.G. § 5E1.1, restitution shall be ordered."

The PSR was furnished to Showerman's attorney, Peter J. Moschetti. At the ensuing probation conference, Moschetti inquired as to the potential impact on sentencing if Showerman were to make full restitution. Though in a subsequent memorandum to the court Moschetti made objections to the PSR, he made no objection to the recommended order of restitution. Indeed, in the memorandum Moschetti urged the court to consider favorably Showerman's ability to make restitution in full.

At the sentencing hearing, Moschetti's associate David Taffney appeared as Showerman's attorney and was questioned as to whether he had reviewed the PSR with Showerman:

THE COURT: .... Mr. Taffney, I assume you have the Presentence Report and have reviewed it with your client.

MR. TAFFNEY: Yes, we have, Your Honor.

THE COURT: ....

Do you have any dispute with the Sentencing Guidelines insofar as the factual matters are concerned?

MR. TAFFNEY: Factually, no, Your Honor. Our objections run to the computations, which I guess is a legal argument. (Sentencing Hearing Transcript, January 13, 1995, at 2.). Taffney proceeded to make arguments as to the applicability of various provisions of the Sentencing Guidelines but made no mention of the possibility of an order of restitution. After resolving the stated objections and hearing Taffney's plea for leniency, the court imposed sentence as indicated above, including the order that Showerman pay $129,765.91 in restitution.

This appeal followed.

## II. DISCUSSION

On appeal, Showerman acknowledges that in the Plea Agreement he agreed to make restitution, that at his plea hearing he acknowledged having reviewed that Agreement, and hence that "[t]here is evidence that suggests that [he] may have known that such a punishment could have been imposed." (Showerman brief on appeal at 6.) He argues, however, that in light of the district court's failure to advise him at the plea hearing of the possibility that he would be ordered to pay restitution and the court's failure to determine that he understood the Plea Agreement to mean that his sentence might include an order of restitution, Fed. R.Crim.P. 11 requires that the order of restitution be vacated. The government acknowledges that the plea proceedings contained no mention of the possible order of restitution, and hence that Rule 11 was violated, but it contends that the error was harmless in light of Showerman's Plea Agreement. We conclude that the error was not harmless.

A. *The Failure To Advise of a Possible Order of Restitution*

 Rule 11 provides, *inter alia,* that before accepting a plea of guilty, "the court must address the defendant personally in open court and *inform the defendant of, and determine that the defendant understands* ... the maximum possible penalty provided by law, ... and ... *that the court may ... order the defendant to make restitution to any victim of the offense.*" Fed.R.Crim.P. 11(c)(1) (emphasis added). This Rule is "de-signed to ensure that a defendant's plea of guilty is a voluntary and intelligent choice among the alternative courses of action open to the defendant." *United States v. Renaud,* 999 F.2d 622, 624 (2d Cir.1993) (citation omitted); *see also North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970); *McCarthy v. United States,* 394 U.S. 459, 464, 89 S.Ct. 1166, 1169, 22 L.Ed.2d 418 (1969). "[A]t bottom, the colloquy required by Rule 11 is meant to ensure that the defendant is aware of the consequences of his plea." *United States v. Fernandez,* 877 F.2d 1138, 1143 (2d Cir.1989) (citation omitted). Accordingly, we have generally required strict adherence to the provisions of the Rule. *See, e.g., United States v. Renaud,* 999 F.2d at 624; *United States v. Lora,* 895 F.2d 878, 880 (2d Cir.1990); *United States v. Rossillo,* 853 F.2d 1062, 1065–66 (2d Cir.1988); *United States v. Gonzalez,* 820 F.2d 575, 578 (2d Cir.1987) (per curiam).

Although harmless-error analysis applies to violations of Rule 11, *see* Fed.R.Crim.P. 11(h) ("Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded."), "it is fair to say that the kinds of Rule 11 violations which might be found to constitute harmless error upon direct appeal are fairly limited," 1983 Advisory Committee Note to Fed.R.Crim.P. 11. The importance of ensuring that the defendant be aware of the consequences of pleading guilty has led us to exercise considerable caution before finding that an omission from the court's advice to the defendant, required by Rule 11(c)(1), as to the minimum and maximum penalties prescribed by law, was harmless. We ordinarily do not consider an understatement of the maximum authorized penalty, combined with the sentencing of the defendant to a penalty greater than that of which he was advised, to be an error that is harmless. *See United States v. Renaud,* 999 F.2d at 625; *id.* at 624–25 (imposition of three-year term of supervised release after court informed defendant that maximum was one year was harmless error only because the defendant took the position that even upon receiving correct information he did not want to withdraw his plea); *see also United States v. Khan,* 857

**1528**

F.2d 85, 86–88 (2d Cir.1988) (discussed in detail below), *modified on reh'g,* 869 F.2d 661 (2d Cir.1989), *cert. denied,* 498 U.S. 1028, 111 S.Ct. 682, 112 L.Ed.2d 674 (1991). *But see United States v. Taddeo,* 987 F.2d 139, 140–41 (2d Cir.) (per curiam) (error was harmless where court's failure to advise defendant of the maximum penalties was corrected at plea hearing in time to allow withdrawal of plea), *cert. denied,* —— U.S. ——, 113 S.Ct. 2451, 124 L.Ed.2d 667 (1993); *United States v. Saenz,* 969 F.2d 294, 296–98 (7th Cir.1992) (failure to advise of minimum eight-year supervised-release term was harmless error in light of advice that defendant could receive a maximum supervised-release term of life).

In *Khan,* we held that the district court's failure to advise a defendant of the possibility that his sentence could include an order of restitution, followed by a sentence that included such an order, was not harmless error. In the plea hearing in *Khan,* there apparently was no evidence to suggest that the defendant had any understanding, prior to entering his plea, that an order of restitution was a possible consequence of his plea agreement. The district court did not indicate at the plea hearing that the sentence might include a restitution order, nor did it ask the defendant whether he understood that such an order was a possibility. In addition, the government stated that as part of its plea agreement with the defendant, the government "did not 'intend to ask for any victim restitution.'" 857 F.2d at 86–88. We held that the court's error in failing to advise Khan that his sentence might include an order of restitution could not be deemed harmless because his decision to plead guilty might have been different had the possibility of such an order been explained to him. *See id.* at 87–88.

In the present case, though the communications between Showerman's attorney and the probation department reflect counsel's awareness that Showerman had agreed to make restitution, the record does not demonstrate that Showerman himself, at the time of the Plea Agreement or of his plea, understood that there was a possibility that the court could include a restitution order in his sentence. At the plea hearing, in summariz-

ing the punishment that could be imposed on Showerman if he pleaded guilty, the court itself did not mention restitution. Following its own summary, the court asked Showerman, "You understand all of that to be the consequences of your plea here?" Showerman answered, "Yes." Further, the punishments listed in Paragraph 2 of the Plea Agreement focused principally on the extent of incarceration, fine, and supervision that could be included in the sentence, without mentioning the possible inclusion of an order of restitution. Although Paragraph 8 of the Agreement dealt with restitution, that paragraph expressed the defendant's *agreement* to make restitution; it made no reference to the court's power to order restitution as part of the sentence. And when, at the court's request, the AUSA summarized the Plea Agreement, that summary did not include any mention of restitution. The court asked, "Mr. Showerman, is that your understanding of the plea agreement as articulated by the Assistant United States Attorney?" Showerman responded, "Yes." If indeed Showerman understood the Agreement to be in accordance with the AUSA's description, which contained no mention of restitution, and understood the court to have explained "the consequences" of his plea, it is entirely possible that he did not understand that his sentence could include an order of restitution. We conclude that the district court's error was not harmless.

**B. Remedy**

■ As a remedy for the Rule 11 error, Showerman urges that we simply vacate so much of the judgment as ordered him to pay restitution. The government, noting that Showerman had expressly agreed to pay restitution, urges, if we find the court's error not harmless, that we give the government the option of vacating the Plea Agreement and reinstating the indictment as to Showerman. We find neither suggestion completely satisfactory.

Generally, when the sentencing court has materially erred in giving the information required by Rule 11, we correct the error by giving the defendant an opportunity to enter a new plea on the basis of correct informa-

tion. *See, e.g., United States v. Story,* 891 F.2d 988, 996–97 (2d Cir.1989); *United States v. Alejandro,* 569 F.2d 1200, 1201–02 (2d Cir.1978) (per curiam). However, the exercise of that option may expose the defendant to a sentence more severe than that originally imposed. To avoid deterring defendants from challenging unlawful components of their sentences, we recently allowed a defendant who prevailed in this Court on his Rule 11 argument to withdraw his appeal rather than hazard the possibility of a harsher sentence on remand. *See United States v. Bohn,* 959 F.2d 389, 394–95 (2d Cir.1992); *see also United States v. Cotto,* 979 F.2d 921, 923–24 (2d Cir.1992) (permitting the successful appellant to withdraw his appeal rather than incur "the risk of exposure to an increased sentence" resulting from his "victory" on appeal).

At the same time, we have neither a desire to prevent the court from imposing any sentence that is lawful nor any wish to cause unnecessary prolongation of proceedings in the district court. Accordingly, we have on occasion given the district court the option simply of eliminating the improper portion of its sentence. *See, e.g., United States v. Khan,* 869 F.2d at 662. And in some instances we have remanded for the court to impose whatever sentence it chose within the original range of permissibility. *See, e.g., United States v. Young,* 932 F.2d 1035, 1038 (2d Cir.1991) (fine not imposed originally, in order to give priority to restitution, might be imposed on remand in view of the vacation of the restitution order); *see also United States v. Leonard,* 37 F.3d 32, 37 (2d Cir.1994) (finding departure inadequately explained, and vacating entire sentence "in order to give the district court complete flexibility upon resentencing").

In the present case, we elect to provide a sequence of options designed to accommodate all of the competing interests as follows. We conditionally vacate the judgment, giving Showerman the opportunity to avoid vacatur by withdrawing his appeal within 21 days of the filing of this opinion. If Showerman does not withdraw his appeal within that time, the sentence will be vacated and the matter remanded to the district court; the mandate of this Court will issue at that time. In the event of remand, the district court may elect to forgo the imposition of restitution; if the court elects that option, Showerman's plea of guilty shall stand, and the court may resentence him, imposing any other sentence that is authorized by law. If the court declines that option, Showerman shall have the option of withdrawing his plea of guilty and proceeding to trial on all counts of the indictment on which the government elects to proceed. In the event of conviction after trial, Showerman will be subject to the full range of penalties authorized by law, including restitution, for any offense of which he is convicted.

## CONCLUSION

We have considered all of the parties' arguments on this appeal and, except to the extent indicated above, have found them to be without merit. The judgment is conditionally vacated in accordance with the foregoing. Unless defendant withdraws his appeal, the mandate shall issue in 21 days.