UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2016

(Argued: January 19, 2017          Decided: June 19, 2017)

Docket Nos. 15-1080, 15-1183

_____

UNITED STATES OF AMERICA,

*Appellee,*

-- v. --

KELVIN BURDEN, aka Waffle, aka Uncle, aka Unc,
JERMAINE BUCHANAN, aka Ski,

*Defendants-Appellants,*

TERRENCE BOYD, TODD SUMMERVILLE, ANTHONY BURDEN, aka Tony, aka Mackey,
WILLIE PREZZIE, aka Dog, aka Prez, ANTHONY BUCHANAN, aka Jungle, TERRENCE
THOMPSON, aka Creed, MICHAEL SAWYER, aka Michael Moss, TERRA NIVENS, aka
Stink, aka Stinkfinger, FRANK KNIGHT, aka Groovy, aka Ace, DWIGHT MASCHEK,
aka Shorty, JERMAINE MARTIN, aka Psycho, ANDRE MCCLENDON, aka Popsicle,
MICHAEL GLENN, aka Rockafella, ROBERT JONES, aka Swinger, DAVID M. BURDEN,
aka DMX, aka X, DAVID L. BURDEN, aka Quinten, aka Sid, JOSEPH DANIELS, aka
Digital, LAVON GODFREY, ALVIN WHITE, aka Uncle Lee, ANDRE DAWSON, aka Yup

Yup, JEFFREY FREDERICKS, aka JL, aka Dahmer, JAHOD NASH, aka Hottie Jig, MARK CALDWELL, aka Lt. Sparks, KEVIN HAMLETTE, aka Fresh, PATRICE ST. SURIN, aka Patrick, aka Watty Wat, ERNEST EUGENE WELDON, aka Gene, aka Mean Gene, aka Mean One, THOMAS HOLMAN, aka Uno, ADAM SANDERS, aka AD, KENDAL MULLINS, aka K-Nice, THOMAS FAGAN, JOSEPH DARDEN, JEFFREY LOCKHART, LAMONT BROWN, aka L, ST. CLAIR BURDEN, aka Gowser, aka GP, aka Boo Boo, CEDRIC BURDEN, aka Sid, ANTONIO WILLIAMS, aka Lo Lo, ANGEL CABRERA, aka Cheeks, KEITH LYONS, aka Papa Large, aka Pops, BARNEY BURDEN, aka Rock, aka Buddy, aka Buddy Rock, DEMETRIUS STORY, LESLIE WAYNE CARLOS, aka Cheetah,

*Defendants.*

————————

B e f o r e:

KATZMANN, *Chief Judge*, KEARSE and LIVINGSTON, *Circuit Judges.*

————————

Defendant-appellant Kelvin Burden appeals from a judgment entered against him on March 23, 2015, resentencing him to 365 months' imprisonment and a life term of supervised release. Defendant-appellant Jermaine Buchanan appeals from a judgment entered against him on the same day, also resentencing him to 365 months' imprisonment and a life term of supervised release. Prior to the resentencing proceedings, the defendants had entered into stipulations with the government, pursuant to which each defendant withdrew his pending habeas petition in exchange for being resentenced within a binding range of 262–365 months' imprisonment. On appeal, both defendants argue that the district court erred in (1) failing to advise them before accepting their stipulations that they faced terms of supervised release and (2) imposing life terms of supervised release without adequate explanation. The government contends that the defendants waived their right to appeal in the resentencing stipulations. We hold that the appeal waivers are enforceable, but do not encompass the defendants'

2

appeals of their terms of supervised release. We do not resolve whether the district court erred in failing to advise the defendants that they faced terms of supervised release, because even assuming that it did, the error was not plain. Plain error was committed, however, when the district court implicitly hinged the defendants' life terms of supervised release on the need for retribution—an imperative that is relevant to fashioning a term of incarceration, but not a term of supervised release.

Accordingly, we **VACATE** the defendants' terms of supervised release, **REMAND** for resentencing as to supervised release, and **AFFIRM** the judgments in all other respects.

———————————

ROBERT M. SPECTOR (Marc H. Silverman, *on the brief*), Assistant United States Attorneys, *for* Deirdre M. Daly, United States Attorney for the District of Connecticut, New Haven, CT.

HARRY SANDICK, Patterson Belknap Webb & Tyler LLP, New York, NY, *for Kelvin Burden*.

MARSHA R. TAUBENHAUS, Law Offices of Marsha R. Taubenhaus, New York, NY, *for Jermaine Buchanan*.

———————————

PER CURIAM:

In 2003, a jury convicted defendants-appellants Kelvin Burden and Jermaine Buchanan of, among other things, racketeering, violent crimes in aid of racketeering, and conspiracy to distribute and possess with intent to distribute more than 50 grams of cocaine base and five kilograms or more of cocaine. Both

men were sentenced to life imprisonment. After exhausting their direct appeals, both defendants brought habeas petitions to vacate their convictions pursuant to 28 U.S.C. § 2255. In October 2014, each defendant entered into a "Stipulation for Resentencing" with the government, in which the defendants agreed that they would withdraw their habeas petitions in exchange for being resentenced based on a binding range of 262–365 months' imprisonment. The district court (Hall, *J.*) resentenced both Burden and Buchanan to 365 months' imprisonment and to life terms of supervised release.

On appeal, both defendants argue that the district court erred in (1) failing to advise them before accepting their stipulations that they faced terms of supervised release and (2) imposing life terms of supervised release without adequate explanation. The government asserts that the defendants waived their right to appeal in the resentencing stipulations. We hold that the appeal waivers are enforceable, but we construe them narrowly so as not to encompass the defendants' appeals of their terms of supervised release. On the merits, we decline to resolve whether the district court erred in failing to advise the defendants that they faced terms of supervised release, because even assuming

4

that it did, the error was not plain. Plain error was committed, however, when the district court implicitly hinged the defendants' life terms of supervised release on the need for retribution—an imperative that is relevant to fashioning a term of incarceration, but not to fashioning a term of supervised release.

Accordingly, we **VACATE** the defendants' terms of supervised release, **REMAND** for resentencing as to supervised release, and **AFFIRM** the judgments in all other respects.

## BACKGROUND

From 1997 to 2001, Kelvin Burden and Jermaine Buchanan (among others) participated in a cocaine trafficking conspiracy, operated out of Norwalk, Connecticut. Burden supervised the conspiracy and Buchanan was heavily involved. In 2003, a jury convicted both men of, among other things, racketeering, in violation of 18 U.S.C. § 1962(c); violent crimes in aid of racketeering ("VCAR"), including conspiracy to murder, attempted murder, and, in the case of Burden, murder, all in violation of 18 U.S.C. § 1959(a); and conspiracy to distribute and possess with intent to distribute more than 50 grams

5

of cocaine base and five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).

Burden faced a mandatory minimum sentence of life imprisonment on the VCAR murder count (Count Eight) and, in light of his prior felony drug convictions, on the drug conspiracy count (Count Twelve). Accordingly, in November 2003, the district court sentenced Burden principally to life imprisonment. Buchanan did not face a statutory mandatory minimum of life imprisonment, but the then-mandatory Guidelines called for a term of life imprisonment. In April 2004, the district court sentenced Buchanan principally to life imprisonment.

About a decade later, after exhausting their direct appeals, both men brought habeas petitions to vacate their convictions on the basis of undisclosed *Brady* evidence—namely, contemporaneous benefits to a key cooperator—and the partial recantation of the same cooperator. The government opposed the motions. In October 2014, without conceding their positions, the defendants entered into separate resentencing stipulations with the government to resolve their pending habeas petitions.

Pursuant to Burden's stipulation, Burden agreed to amend his § 2255 petition to withdraw his request for a new trial and to replace it with a request to vacate his VCAR murder conviction on Count Eight of the operative indictment. The government, in turn, agreed that the district court should grant such relief and that the district court should vacate the judgment and conduct a full resentencing as to the remaining counts of conviction. The stipulation also provided that the government would rely on only one of Burden's prior drug offenses at resentencing, with the result that Count Twelve (the drug conspiracy) would carry a mandatory minimum sentence of 20 years rather than life.[1] The parties further stipulated to a binding Guidelines range of 262–365 months' incarceration.[2] The stipulation provided that, "if the Court accepts the agreement, [the Court] will be bound to impose an incarceration term within the range of 262–365 months." Burden App. 461. If, on the other hand, the district court did

---

[1] Ultimately, the government did not rely on any of Burden's prior drug offenses at resentencing, and Burden's mandatory minimum sentence at resentencing was thus 10 years.

[2] The parties calculated Burden's Guidelines range as life, but stipulated to a downward variance.

not accept the stipulation, the stipulation would be void and the parties would continue litigating the § 2255 petition.

Buchanan's stipulation with the government operated similarly, with the parties agreeing that Buchanan would amend his § 2255 petition to withdraw his request for a new trial in favor of a request to vacate the jury's finding as to Act of Racketeering 4 (murder) of Count One of the operative indictment. As with Burden's stipulation, Buchanan and the government stipulated that the district court, if it were to accept the stipulation, would conduct a full resentencing based on a binding Guidelines range of 262–365 months' incarceration.[3]

Finally, both stipulations contained identical appeal waivers:

> [I]f the Court adopts this stipulation and imposes an incarceration term within the agreed-upon guideline range of 262–365 months' incarceration, the petitioner waives and gives up his right to appeal and/or collaterally attack any alleged error in connection with the re-sentencing itself and waives and gives up any right to raise any claim on direct appeal or collateral attack related to his remaining, underlying convictions or anything that occurred in this case prior to the re-sentencing itself . . . .

Burden App. 459; Buchanan App. 194–95.

---

[3] The parties calculated Buchanan's Guidelines range as 360 months to life, but stipulated to a downward variance.

Neither stipulation mentioned supervised release.

On October 24, 2014, the district court presided over a joint hearing modeled on a Rule 11 plea hearing, in which it carefully canvassed the defendants to ensure that they understood the stipulations and the rights that they were waiving by entering into them. The district court did not advise the defendants that they faced terms of supervised release. Based on their counts of conviction, Burden faced a mandatory minimum term of 10 years' supervised release[4] and Buchanan faced a mandatory minimum term of 5 years' supervised release. Upon completing its respective canvass of each defendant, the district court found that Burden and Buchanan had entered into their stipulations knowingly and voluntarily. It deferred decision, however, on whether it would accept the stipulations and proceed to resentence the defendants within the stipulated sentencing ranges.

On March 13, 2015, the district court held a joint proceeding to determine whether it could accept the resentencing stipulations. After hearing from the

---

[4] Because the government opted at resentencing to withdraw the prior felony information altogether, Burden ultimately faced a mandatory minimum term of 5 years' supervised release. *See* 21 U.S.C. § 841(b)(1)(A).

parties, the district court determined that it would enter the stipulations in both cases and granted each defendant's amended § 2255 petition. The district court then sentenced Burden to 365 months' imprisonment (the top of the stipulated Guidelines range), emphasizing the seriousness of his offense. After announcing the term of incarceration, the court imposed a life term of supervised release on Burden, which was well above the Guidelines range of 5 years' supervised release. *See* U.S.S.G. § 5D1.2 cmt. n.6 (2014) (explaining that where "the relevant statute requires a minimum term of supervised release of five years and a maximum term of life, the term of supervised release provided by the guidelines is five years").

The court then turned to resentencing Buchanan and imposed a matching sentence of 365 months' imprisonment to be followed by the same above-Guidelines life term of supervised release. The court explained that its sentence was "really driven in large part by the seriousness of what Mr. Buchanan did," tempered by his mitigating personal characteristics and circumstances. Burden App. 718. Neither Burden nor Buchanan objected to the district court's imposition of their supervised release terms.

10

These appeals followed.[5]

<strong>DISCUSSION</strong>

<strong>I.</strong>

We begin with the enforceability of the defendants' appeal waivers. We have long held that "[w]aivers of the right to appeal a sentence are presumptively enforceable." *United States v. Arevalo*, 628 F.3d 93, 98 (2d Cir. 2010). "[E]xceptions to the presumption of the enforceability of a waiver . . . occupy a very circumscribed area of our jurisprudence." *United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000). In particular, we have in prior cases articulated four grounds on which an appeal waiver may be deemed unenforceable: (1) where the "waiver was not made knowingly, voluntarily, and competently;" (2) where the sentence was "based on constitutionally

---

[5] As the government notes, Buchanan's appeal was untimely by several days. However, in its brief, the government expressly forfeits any timeliness objection. *See* Gov't Br. n.1 (citing *United States v. Frias*, 521 F.3d 229, 231 (2d Cir. 2008) ("[T]he time limits of [Federal Rule of Appellate Procedure] 4(b) are not jurisdictional and are therefore capable of forfeiture by the government.")). We see no reason not to consider Buchanan's arguments to the extent they are not foreclosed by his stipulation's appeal waiver.

impermissible factors, such as ethnic, racial or other prohibited biases;" (3) where the government breached the agreement containing the waiver; and (4) where the district court "failed to enunciate any rationale for the defendant's sentence." *Id.*

Buchanan argues that because his term of imprisonment and term of supervised release exceed 365 months when combined, his stipulation was breached and his appeal waiver is thus invalid. We find no merit in this argument. Buchanan's stipulation made clear that the binding sentencing range of 262–365 months' imprisonment encompassed only the term of incarceration. *See* Buchanan App. 194–95 ("[I]f the Court adopts this stipulation and imposes an *incarceration term* within the agreed-upon guideline range of 262–365 months' incarceration . . . ." (emphasis added)); *see also id.* at 197 ("[I]f the Court accepts the agreement, it will be bound to impose an *incarceration term* within the range of 262–365 months." (emphasis added)). Buchanan observes that, in canvassing him on October 24, 2014, the district court described the parties' agreement as that Buchanan's "sentence should be within the range of 262 to 365 months." *Id.* at 246. But in making this and similar statements, the district court did not

suggest that it was referring to anything other than the incarceration component of Buchanan's sentence, nor did it alter the terms of the stipulation.

To the extent Buchanan argues in the alternative that the district court breached the stipulation by imposing *any* term of supervised release, this argument also fails. Though the stipulations were silent regarding the potential imposition of a term of supervised release—an omission we will return to in construing the scope of the waivers—that silence is not tantamount to an implied agreement that the sentence would not encompass such a term. Indeed, no such agreement could legally have been reached, given that Buchanan faced a mandatory minimum term of supervised release. Accordingly, the district court did not run afoul of the stipulation when it sentenced Buchanan to a term of incarceration within the agreed-upon range, along with a term of supervised release.

Buchanan next contends that the appeal waiver should not be enforced because it is unilateral in nature and contravenes public policy. Although the enforceability of unilateral appeal waivers in the plea context is well settled, Buchanan urges us not to countenance them in the context of a stipulation

resolving a § 2255 petition. We decline to adopt any such categorical rule. While

we scrutinize "unorthodox" appeal waivers closely, the waiver here was

accompanied—to the district court's credit—by the procedural safeguards that

would be required in the familiar context of a guilty plea. *United States v. Rosa*,

123 F.3d 94, 99 (2d Cir. 1997). Buchanan was represented by counsel and the

district court canvassed Buchanan repeatedly and specifically on his

understanding of the waiver. We thus see no reason, under the circumstances of

this case, to depart from our general rule that "[w]aivers of the right to appeal a

sentence are presumptively enforceable" and will be enforced so long as they are

knowing and voluntary. *Arevalo*, 628 F.3d at 98. Moreover, to the extent

Buchanan is arguing that unilateral appeal waivers are fundamentally unfair, we

have explained that an appeal waiver can work to a defendant's advantage

insofar as it constitutes a "bargaining chip" that "can be exchanged for

concessions from the [government]." *United States v. Granik*, 386 F.3d 404, 412 (2d

Cir. 2004); *cf. United States v. Mezzanatto*, 513 U.S. 196, 208 (1995) ("[I]f the

prosecutor is interested in 'buying' the reliability assurance that accompanies a

waiver agreement, then precluding waiver can only stifle the market for plea

bargains. A defendant can 'maximize' what he has to 'sell' only if he is permitted to offer what the prosecutor is most interested in buying.").

Buchanan's invocation of the public interest is particularly misplaced in light of the relief he requests. Buchanan contends that it contravenes the public interest to insulate significant violations and misconduct of the kind alleged in his habeas petition from appellate review. But Buchanan is not seeking to press the claims he raised in his habeas petition, either before us or below. Rather, he asks that we vacate his sentence and remand for resentencing, meaning that the violations he alleged in his habeas petition will remain insulated from review. In any case, we have long permitted a defendant to waive his right to collaterally attack his conviction and sentence. *See Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016) (per curiam).

Finally, the defendants contend that the district court erred in failing to advise them of their exposure to terms of supervised release prior to accepting their stipulations. Since neither defendant raised the claimed error below, our review is for plain error. *See United States v. Tulsiram*, 815 F.3d 114, 119 (2d Cir. 2016) (per curiam); Fed. R. Crim. P. 52(b). We analyze the argument at this

15

juncture because, if the defendants were correct that the district court erred in this manner, the error would arguably vitiate the defendants' appeal waivers by undermining their knowing and voluntary nature.

Rule 11 of the Federal Rules of Criminal Procedure requires district courts to inform a defendant entering a guilty plea of, among other things, "any maximum possible penalty, including imprisonment, fine, and term of supervised release," as well as "any mandatory minimum penalty." Fed. R. Crim. P. 11(b)(1)(H) – (I). We need not resolve whether the district court was subject to a similar obligation here—on a theory that a Rule 11-like colloquy is necessary to ensure that a resentencing stipulation resolving a habeas petition is entered into knowingly and voluntarily—because, even assuming that it was, the error would not be plain.[6]

---

[6] To the extent Buchanan contends that the district court's alleged error in this regard should be reviewed under a less rigorous standard because he could not have been expected to know at the time that he faced a supervised release term, we disagree. In the analogous Rule 11 context, a defendant who argues for the first time on appeal that the district court did not comply with Rule 11 must show plain error in order to obtain relief. *See United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004).

"Plain error review requires a defendant to demonstrate that (1) there was error, (2) the error was plain, (3) the error prejudicially affected his substantial rights, and (4) the error seriously affected the fairness, integrity or public reputation of judicial proceedings." *United States v. Cook*, 722 F.3d 477, 481 (2d Cir. 2013) (internal quotation mark omitted). Generally, the "substantial rights" prong requires a defendant to demonstrate that the claimed error "'affected the outcome of the district court proceedings.'" *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)); *cf. United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004) ("[A] defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea."). Neither defendant makes that showing here. Buchanan does not claim he would not have entered into the stipulation had he known he faced a term of supervised release. And Burden effectively concedes he cannot make the required showing, instead arguing that we should remand for fact-finding on the question of what Burden would have done had he been advised by the district court of his exposure to a

term of supervised release at resentencing. We decline Burden's invitation to soften the strictures of plain error review.[7]

Accordingly, the appeal waivers are enforceable.

## II.

That the appeal waivers are enforceable does not resolve their scope. The defendants waived their right to appeal "any alleged error in connection with the re-sentencing itself." Burden App. 459; Buchanan App. 194–95. Despite the apparent breadth of this language, the defendants argue that the waivers must be construed narrowly so as not to extend to their challenges to their terms of supervised release. We agree.

Because appeal waivers in the criminal context appear in "unique contracts," we "temper the application of ordinary contract principles with

---

[7] Burden relies on *United States v. Showerman*, 68 F.3d 1524 (2d Cir. 1995), in which we reviewed a Rule 11 challenge for harmless error, rather than plain error, despite the absence of a contemporaneous objection. *See id.* at 1527–28. Determining that the district court's failure to advise the defendant of its authority to impose a restitution order was not harmless, we devised a flexible remedy that permitted the defendant to withdraw his guilty plea if the district court did not refrain from imposing restitution on remand. *Id.* at 1528–29. *Showerman* predated *Dominguez Benitez*, however, and its relevance to the appropriate remedy here is thus limited at best.

special due process concerns for fairness and the adequacy of procedural safeguards." *Granik*, 386 F.3d at 413 (internal quotation marks omitted). One way we strike the balance is by applying appeal waivers "narrowly and constru[ing] [them] strictly against the Government." *United States v. Pearson*, 570 F.3d 480, 485 (2d Cir. 2009) (per curiam) (internal quotation mark omitted).

Indeed, as the government acknowledges, "[w]hen an appeal waiver is silent regarding a specific aspect of a sentence, this Court generally finds that the appeal waiver does not foreclose challenges to that aspect of the sentence." Gov't Br. 42. We have repeatedly applied this principle in narrowly construing appeal waivers comparable in breadth to the one at issue here. For example, in *United States v. Oladimeji*, 463 F.3d 152 (2d Cir. 2006), we held that an appeal waiver providing that the defendant would "not file an appeal or otherwise challenge the conviction or sentence" if the court imposed a prison term within a particular range did not bar the defendant's appeal of the restitution order imposed as part of his sentence—even though the court imposed a term of imprisonment within the contemplated range. *Id.* at 156. We reasoned that "although a broad and literal reading of the agreement would bar appeal from any aspect of the

19

sentence, the agreement could also be reasonably construed to bar challenges to the conviction and to the duration of confinement, but not to cover determinations of restitution." *Id.* at 157. Because, in context, the term "sentence" could be read to refer to a period of incarceration alone, the term was ambiguous and the ambiguity was resolved against the government. *Id.* Such an interpretation accorded with "[t]he apparent logic of the agreement," which "was that the defendant would give up any challenges to the lawfulness of his conviction and the determination of his prison sentence if his period of imprisonment was below a specified maximum." *Id.* at 156.

Similarly, in *United States v. Cunningham*, 292 F.3d 115 (2d Cir. 2002), the defendant agreed that he would not "file an appeal or otherwise challenge his conviction or sentence in the event that the Court impose[d] the sentence specified in paragraph 7(c) [of the plea agreement]." *Id.* at 116. Paragraph 7(c) of the plea agreement specified that the government would recommend a term of imprisonment of time served, but neither paragraph 7(c) nor the remainder of the plea agreement spoke to supervised release. *Id.* The district court sentenced the defendant to time served but also imposed a two-year term of supervised release.

*Id.* The defendant appealed, challenging the length of his supervised release term. *Id.* at 117. Again, although the waiver read literally would bar the appeal, we reasoned that because the defendant "was not sentenced solely to the sentence specified in [paragraph] 7(c)—time served," but rather "to time served *and* two years' supervised release," we could not "say [that the defendant] waived his right to appeal the length of his term of supervised release." *Id.*

Likewise, here, the defendants were not sentenced solely to the contemplated terms of incarceration, but also to life terms of supervised release. The government does not present a basis for distinguishing *Cunningham* from this case. And, as in *Oladimeji*, the defendants' appeal waivers can be construed narrowly to cover only challenges to terms of incarceration, consistent with the "apparent logic" of the defendants' stipulations. *Oladimeji*, 463 F.3d at 156. Just as we narrowly construed the term "sentence" in *Oladimeji* to refer only to a period of incarceration, we may narrowly construe the term "re-sentencing" in the instant appeal waivers in the same fashion. Given that the stipulations do not so much as mention supervised release, such a construction follows directly from our precedent. *See also Pearson*, 570 F.3d at 485–86 (holding that defendant who waived

21

right to appeal "any sentence incorporating [an order to pay restitution 'in full']" did not waive right to appeal errors in calculating "full" restitution); *United States v. Stearns*, 479 F.3d 175, 177–78 (2d Cir. 2007) (per curiam) (holding that defendant who waived "right to appeal . . . any sentence imposed by the Court" at or below the mandatory minimum did not waive right to appeal decision to run sentence only partially concurrently with undischarged state sentence).[8]

The government resists the application of these precedents, pointing to the breadth of the appeal waivers at issue and noting that we have previously invited the government "to negotiate for a broader waiver" if it wished to preclude appeal of particular components of a sentence. *Cunningham*, 292 F.3d at 117. But while Burden's and Buchanan's appeal waivers are broad as a literal matter, so were those in the cases just discussed. The principle animating our case law in this area is not that waivers must be "broader" to achieve broad application, but that they must be sufficiently specific so as to properly safeguard

---

[8] Though the government argues that the district court here advised the defendants as to the breadth of the appeal waivers, the district court did not mention supervised release until it imposed sentence. Thus, even assuming that those colloquies could properly inform our construction of the waivers, the same analysis as was undertaken in *Oladimeji* and *Cunningham* applies.

defendants' rights. Demanding such specificity helps to ensure that a defendant understands precisely what it is that he is waiving and the consequences of his waiver. Drafted as they are, we construe the waivers at issue narrowly to encompass only appeals of the defendants' terms of incarceration.

Accordingly, we hold that Buchanan, who alone complains of alleged errors in connection with the incarceration component of his sentence, waived his various challenges to the procedural and substantive reasonableness of his term of incarceration. The defendants did not, however, waive their challenges to the procedural reasonableness of their life terms of supervised release.

## III.

Both defendants challenge the procedural reasonableness of their life terms of supervised release, arguing that the district court did not adequately explain the reasons for its significant variance from the Guidelines range of 5 years' supervised release. "A district court commits procedural error where it . . . fails adequately to explain its chosen sentence . . . ." *United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (en banc). "Procedural reasonableness is reviewed for abuse of discretion." *United States v. Desnoyers*, 708 F.3d 378, 385 (2d Cir. 2013).

23

Where a defendant does not contemporaneously object to a district court's failure to provide an adequate explanation for its chosen sentence, "plain error analysis in full rigor" applies. *United States v. Villafuerte*, 502 F.3d 204, 211 (2d Cir. 2007).[9]

The defendants' challenge arises from the fact that the district court did not separately address their above-Guidelines life terms of supervised release, instead providing one explanation for the entirety of each defendant's sentence. We need not resolve the extent to which the district court was required to separately explain the above-Guidelines supervised release terms because even assuming that the district court was under no such general obligation, we do not think its sentencing explanations could support either defendant's life term of supervised release.

Section 3553(a) provides the framework for sentencing decisions, requiring the district court in imposing a sentence to consider, *inter alia*, "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect

---

[9] Buchanan suggests that we should relax the strictures of plain error review because he lacked sufficient notice that the district court might impose a life term of supervised release. However, the first page of the defendants' respective Presentence Reports disclosed that they faced up to life terms of supervised release. As a result, plain error review applies to these challenges.

for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Section 3583(c), which guides the district court in imposing a term of supervised release, is different. That section requires the district court to consider almost all of the § 3553(a) factors, but specifically does *not* require the district court to consider the factors listed in § 3553(a)(2)(A), all of which go to the seriousness of the defendant's offense.

Congress's omission of this set of factors accords with the purposes of supervised release. "Supervised release . . . is not a punishment in lieu of incarceration." *United States v. Granderson*, 511 U.S. 39, 50 (1994). To the contrary, "Congress intended supervised release to assist individuals in their transition to community life." *United States v. Johnson,* 529 U.S. 53, 59 (2000). Accordingly, "[s]upervised release fulfills rehabilitative ends, distinct from those served by incarceration." *Id.* As such, "a court may *not* take account of retribution (the first purpose listed in § 3553(a)(2)) when imposing a term of supervised release." *Tapia v. United States*, 564 U.S. 319, 326 (2011) (citing 18 U.S.C. § 3583(c)).

Here, the district court advised Buchanan that its sentence was "really driven in large part by the seriousness of what Mr. Buchanan did." Burden App.

25

718. And it advised Burden that although it believed he was a "changed person," his sentence was "at the top of the [stipulated] range . . . because of really the seriousness of what [he] did, and . . . although years have passed, it doesn't change what [he was] doing." *Id.* at 708. To be sure, in order to impose a term of supervised release that takes account of "the nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), that "afford[s] adequate deterrence," § 3553(a)(2)(B), and that "protect[s] the public from further crimes of the defendant," § 3553(a)(2)(C)—each of which *is* relevant to the supervised release analysis, *see* § 3583(c)—it would be neither possible nor desirable to disregard the seriousness of a defendant's offense. A district court properly weighs the seriousness of the offense as relevant to the application of these mandatory considerations when imposing a term of supervised release. But when a supervised release term is inflected with retributive interests—as appears may have been the case here—the district court commits procedural error and the supervised release term cannot stand.

*United States v. Williams*, 443 F.3d 35 (2d Cir. 2006), is not to the contrary. In *Williams*, the defendant argued that the district court had impermissibly

26

considered the seriousness of his offense in revoking his supervised release term and sentencing him to a term of imprisonment pursuant to 18 U.S.C. § 3583(e). *See id.* at 47. Like 18 U.S.C. § 3583(c), § 3583(e) omits § 3553(a)(2)(A) from the list of § 3553(a) factors that courts are instructed to consider in modifying the conditions of or revoking supervised release. In *Williams*, we held that § 3583(e) did not "forbid[] consideration of other pertinent factors" and could not "reasonably be interpreted to exclude consideration of the seriousness of the releasee's violation, given the other factors that must be considered." *Williams*, 443 F.3d at 47–48. But the district court in *Williams* specifically focused not on the seriousness of the offense *per se*, but on the risk to the public that the seriousness of the defendant's offense suggested. *See id.* at 44 ("While this sentence reflects the seriousness of the offense . . . the court was most concerned with protecting the public from further crimes of the defendant when it imposed the . . . sentence." (emphasis omitted)). Here, by contrast, the district court repeatedly emphasized that its sentence was driven by the seriousness of Buchanan's crimes and that, though Burden had changed in the intervening years, a long sentence was necessary to reflect the seriousness of Burden's crimes. Thus, in contrast to

27

*Williams*, the terms of supervised release in this case appear to have been driven largely by the past seriousness of the defendants' crimes, standing alone. Because this retributive rationale cannot support the lifetime sentences of supervised release imposed, remand is appropriate if this error was plain.[10]

Respectfully, we believe that, as applied to the terms of supervised release, it was. In light of the structure of § 3583(c), the district court's error was clear, thus meeting the first and second prongs of the plain error test; because the defendants' supervised release terms might have been substantially different but for the error, the error affected their substantial rights; and, finally, for essentially those same reasons, the error goes directly to "the fairness, integrity or public reputation of judicial proceedings." *United States v. Cook*, 722 F.3d 477, 481 (2d Cir. 2013).

Because district courts, understandably, often provide only one explanation for the entirety of a sentence—and because the need for retribution is

---

[10] Moreover, the purpose of *revoking* a supervised release term, as occurred in *Williams*, is fundamentally different from the purpose of *imposing* a supervised release term. Whereas the latter is designed to rehabilitate and not to punish, the former is designed primarily to "sanction . . . the defendant's breach of trust." *See* U.S.S.G. Ch. 7, Pt. A, intro. comment. 3(b) (2014).

properly considered in imposing a term of *incarceration* but not a term of supervised release—the procedural error we identify here is one that might be inadvertently made. Even if a district court's imposition of a supervised release term was not ultimately motivated by considerations of retribution, it will often be difficult for a reviewing court to make that judgment (as is the case here). In light of this dynamic, to the extent a district court bases a term of incarceration substantially upon the seriousness of the offense, it would be advisable for the district court to separately state its reasons for the term of supervised release imposed.

Because we vacate the terms of supervised release on this basis, we need not address Buchanan's argument that the district court erred in imposing special conditions on him. Those conditions are vacated along with his supervised release term.

## CONCLUSION

For the foregoing reasons, we **VACATE** the defendants' terms of supervised release, **REMAND** for resentencing as to supervised release, and **AFFIRM** the judgments in all other respects.

KEARSE, *Circuit Judge*, concurring:

I concur in the majority opinion, although I find it difficult to interpret the stipulations in which these federal habeas corpus petitioners agreed to forgo review of their new sentences as not encompassing all facets of their new sentences. Each petitioner agreed that:

> [I]f the Court adopts this stipulation and imposes an incarceration term within the agreed-upon guideline range of 262–365 months' incarceration, the petitioner waives and gives up his right to appeal and/or collaterally attack *any* alleged error *in connection with the re-sentencing itself* and waives and gives up any right to raise *any* claim on direct appeal or collateral attack related to his remaining, underlying convictions *or anything* that occurred in this case prior to the re-sentencing itself . . . .

(Emphases added.)

I regard this language—"any alleged error in connection with the re-sentencing" and "anything that occurred in this case prior to the re-sentencing"—as encompassing everything in connection with petitioners' resentencings and everything in the case that preceded their resentencings. However, because in some cases involving stipulations whose language was slightly less broad, *see, e.g.*, *United States v. Cardona*, 612 F. App'x 622 (2d Cir.

2015); *United States v. Tourloukis*, 558 F. App'x 112, 113, 115 (2d Cir. 2014), we

have found no waiver as to unmentioned aspects of the sentence, I do not

dissent.