*United States v. Charles*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.   WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").   A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of April, two thousand twenty-four.

PRESENT:

> DENNIS JACOBS,
> PIERRE N. LEVAL,
> RICHARD J. SULLIVAN,
> *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                                No. 22-1244

NALERTON CHARLES, a.k.a. Lite,

> *Defendant-Appellant*.

_____

**For Defendant-Appellant:**          Marsha R. Taubenhaus, Law Offices of Marsha R. Taubenhaus, New York, NY.

**For Appellee:**          Nicholas J. Moscow, Miriam L. Glaser Dauermann, James R. Simmons, Assistant United States Attorneys, *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (I. Leo Glasser, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the appeal is **DISMISSED**.

Nalerton Charles appeals from a judgment of conviction following his guilty plea to one count of distribution and possession with intent to distribute over 40 grams of a substance containing fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Pursuant to the terms of Charles's plea agreement with the government, Charles waived the right to appeal or collaterally attack his conviction and sentence so long as the sentence imposed was no greater than 210 months' imprisonment. The district court sentenced Charles to 210 months' imprisonment. Notwithstanding his appeal waiver, Charles now challenges his sentence on appeal; the government has filed a motion to dismiss the appeal in

2

light of the waiver.   We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

Charles asks us to invalidate the appeal waiver in his plea agreement and reach the merits of his challenge to his sentence because he did not knowingly enter the waiver.[1]   Specifically, he argues that the district court's explanation of the waiver provision at his change-of-plea hearing misled him into thinking that he was waiving *only* his right to collateral attack and not his right to direct appeal. We are not persuaded.

While "waivers of the right to appeal a sentence are presumptively enforceable," we may deem unenforceable a waiver that "was not made knowingly, voluntarily, and competently."   *United States v. Burden*, 860 F.3d 45, 51 (alterations and internal quotation marks omitted).   A district court's failure "to comply with the important strictures of Rule 11" of the Federal Rules of Criminal Procedure may render an appeal waiver invalid.   *United States v. Lloyd*, 901 F.3d 111, 118 (2d Cir. 2018); *see* Fed. R. Crim. P. 11(b)(1)(N) (requiring court to inform the defendant of, and determine that the defendant understands, "the

---

[1] Charles also contends that his appeal waiver is unenforceable because unilateral appeal waivers contravene public policy.   However, "the enforceability of unilateral appeal waivers in the plea context is well settled."   *United States v. Burden*, 860 F.3d 45, 52 (2d Cir. 2017).

3

terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence").

Charles did not object to the district court's explanation of his written appeal and collateral attack waiver below, so we review his challenge for plain error. *See Lloyd*, 901 F.3d at 119; *United States v. Cook*, 722 F.3d 477, 479 (2d Cir. 2013) ("We hold that plain error is the standard of review for an unpreserved challenge to an appeal waiver."). To show plain error, Charles "must demonstrate that (1) there was error, (2) the error was plain, and (3) the error prejudicially affected his substantial rights; [even] if such error is demonstrated, we will reverse . . . only when (4) the error seriously affected the fairness, integrity[,] or public reputation of judicial proceedings." *Lloyd*, 901 F.3d at 119 (internal quotation marks omitted).

Charles's plea agreement stated, in relevant part: "The defendant agrees not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the [c]ourt imposes a term of imprisonment of 210 months or below. This waiver is binding without regard to the sentencing analysis used by the [c]ourt." App'x at 14. On the final page of the agreement, immediately above Charles's signature,

4

is the statement: "I have read the entire agreement and discussed it with my attorney. I understand all of its terms and am entering into it knowingly and voluntarily." *Id.* at 18.

During Charles's change-of-plea hearing, after the district court placed Charles under oath, it confirmed that he had "discussed th[e] plea agreement" and "gone over it completely[] with [his] attorney." *Id.* at 29. The district court then explained to Charles that, by pleading guilty pursuant to the plea agreement, he was agreeing not to appeal his sentence if the sentence imposed was no greater than 210 months. The district court specifically asked Charles if he understood that point, and he replied that he did. The district court followed up by asking "[d]o you understand what it means to give up your right to appeal?" *Id.* at 31. Again, Charles confirmed that he understood.

Next, the district court explained that Charles was "also" agreeing not to file a petition under section 2255. *Id.* at 32. The district court asked Charles whether his attorney had reviewed that provision with him and had explained to him "what it is you will [be] giving up by agreeing not to petition pursuant to 28 U.S.C. [§] 2255." *Id.* Charles replied "[y]es" before the court had finished its question, and then said "[y]es" again at the end of the question. *Id.* When the court then

asked Charles what he "underst[ood] that to mean," Charles repeated "yes" a third time, apparently not realizing that the court was asking a new question. *Id.* The court clarified its question, asking, "What do you understand that you are giving up by agreeing not to petition pursuant to 28 U.S.C. [§] 2255?" *Id.* Charles's attorney then interjected to ask if he could have a moment to speak with his client, which the court allowed. After the pause, Charles said, "Yes, Your Honor, I understand that looking at my conviction, giving up my appeal." *Id.* When the district court indicated that it had not understood – or had not heard – Charles's response, Charles repeated, "I'm in [f]ederal [c]ourt, looking at my conviction, giving up appeal." *Id.* The court proceeded to describe the import of the collateral attack waiver, explaining that what Charles was "agreeing to essentially . . . [was] that [he would] not petition this [c]ourt to allege that there was something wrong legally or factually" with "any of the proceedings that had occurred in this case from the time [he was] arrested to the time [he was] sentenced." *Id.* at 33. The district court asked Charles if he understood, and Charles responded that he did.

Finally, the district court instructed Charles to turn to the signature page of the plea agreement and asked him whether he recognized the signature. Charles

confirmed that the signature on the agreement was his. After the district court directed him to read the lines above his signature, Charles read aloud: "I have read the entire agreement and discussed it with my attorney. I understand all its terms and am entering into it knowingly and voluntarily." *Id.* at 34. The district court then asked Charles if his statement was correct, and Charles confirmed that it was.

In sum, the district court did what Rule 11(b)(1)(N) commands: it informed Charles that he was waiving his right to appeal, and it ensured that Charles understood the terms of that waiver. If Charles was confused during his plea hearing, any confusion suggested by the plea allocution was only about the meaning of the collateral attack waiver as it pertained to section 2255. Charles's answers exhibited no confusion about the waiver of appeal . Moreover, Charles's argument that the district court's colloquy led him to think that he was *only* waiving his collateral attack rights is unsupported, and in fact contradicted, by the record. The plea agreement clearly explained that "[t]he defendant agrees not to file an appeal . . . in the event that the Court imposes a term of imprisonment of 210 months or below," and the district court made sure that Charles understood what it meant to give up that right. *Id.* at 14; *see id.* at 32. Given this record,

Charles "has not established a Rule 11(b)(1)(N) error to satisfy the first step of the plain error test," and we are left with no doubt that Charles "made a knowing and voluntary waiver" of his right to appeal. *Cook*, 722 F.3d at 482. His waiver is therefore binding. *See id.* at 483; *Burden*, 860 F.3d at 53.

For the foregoing reasons, we **DISMISS** the appeal.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court