22-1355-cr
United States v. Arguedas

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2023
No. 22-1355-cr

UNITED STATES OF AMERICA,
*Appellee,*

*v.*

ALEXANDER ARGUEDAS, AKA SEALED DEFENDANT 1,
*Defendant-Appellant.*[*]

On Appeal from a Judgment of the United States District Court for
the Southern District of New York.

SUBMITTED: APRIL 11, 2024
DECIDED: APRIL 9, 2025

Before: JACOBS, NARDINI, AND MENASHI, *Circuit Judges*.

---

[*] The Clerk of Court is respectfully directed to unconsolidate Defendant-Appellant Mark Brock's appeal, No. 22-543, which has been resolved separately, *see United States v. Brock*, No. 22-1355-CR, 2024 WL 2013673 (2d Cir. May 7, 2024) (summary order), and to amend the official caption of this case as set forth above.

Defendant-Appellant Alexander Arguedas pled guilty pursuant to a plea agreement in the United States District Court for the Southern District of New York to a racketeering conspiracy, a narcotics conspiracy, and using and carrying firearms in furtherance of a narcotics conspiracy. The district court (Jesse M. Furman, *District Judge*) imposed a below-Guidelines sentence of 390 months of imprisonment, to be followed by five years of supervised release, and a special assessment of $300. The district court also imposed mandatory, standard, and special conditions of supervised release.

Arguedas appealed. His appellate counsel has now moved to be relieved and for appointment of substitute counsel, and submitted a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967). In response, the government has moved to dismiss the appeal as barred by an appeal waiver contained in the plea agreement or, in the alternative, for summary affirmance.

Despite appellate counsel's diligence, the *Anders* brief is incomplete because it does not address Arguedas's conditions of supervised release, which fall outside the scope of the appeal waiver. Such a deficiency in an *Anders* brief, however, is not necessarily fatal to a lawyer's motion to withdraw. We hold that we may nevertheless grant counsel's motion to be relieved when a deficiency in the *Anders* brief is harmless. Where counsel fails to address aspects of the sentence not covered by the appeal waiver, that deficiency: (1) is harmless when we can determine from the record that there are no non-frivolous issues to raise regarding the aspects of the sentence not covered by the appeal waiver; or (2) can be cured if counsel represents that he has discussed with the defendant the potential benefits and risks of challenging those aspects of the sentence that fall outside the appeal waiver, and that the defendant has authorized counsel not to pursue an appeal with regard to those matters.

Applying the harmlessness analysis here, we conclude that there are no non-frivolous issues with respect to the mandatory,

2

standard, and five of the seven special conditions of supervised release, and that appellate counsel's failure to address those conditions in the *Anders* brief is therefore harmless. However, the two remaining special conditions concerning financial disclosure and new lines of credit potentially raise non-frivolous issues for appeal. Accordingly, we defer decision on the motions and order the parties to file supplemental briefing.

> Brandon D. Harper, Assistant United States Attorney, *for* Matthew Podolsky, Acting United States Attorney for the Southern District of New York, New York, NY, *for Appellee*.
>
> Lucas Anderson, Rothman, Schneider, Soloway & Stern, LLP, New York, NY, *for Defendant-Appellant Alexander Arguedas*.

WILLIAM J. NARDINI, *Circuit Judge*:

Defendant-Appellant Alexander Arguedas pled guilty pursuant to a plea agreement in the United States District Court for the Southern District of New York to (1) a racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), (2) a conspiracy to distribute narcotics, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), and (3) using and carrying firearms in furtherance of a narcotics conspiracy, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2. The plea agreement includes an appeal waiver under which Arguedas agreed to waive his right to challenge "any sentence within or below the [advisory range under the United States Sentencing] Guidelines," "any term of supervised release that is less than or equal to the statutory maximum," "any fine that is less than or equal to

$10,000,000," and "any special assessment that is less than or equal to $300." App'x at 96–97.

The district court (Jesse M. Furman, *District Judge*) imposed a below-Guidelines sentence of 390 months of imprisonment, to be followed by five years of supervised release, and a special assessment of $300. The district court also imposed mandatory, standard, and special conditions of supervised release. The district court declined to impose a fine and deferred entry of an order of restitution.

Arguedas appealed. His appellate counsel has now moved to be relieved and for appointment of substitute counsel, and submitted a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967). In the *Anders* brief, appellate counsel argued that there are no non-frivolous grounds for an appeal of Arguedas's conviction. Appellate counsel addressed various aspects of Arguedas's conviction and sentence but did not mention his conditions of supervised release. In response, the government has moved to dismiss the appeal on the basis that the appeal waiver is enforceable and bars Arguedas's appeal. Alternatively, the government has moved for summary affirmance of the conviction, arguing that there are no non-frivolous issues for appeal.

Despite appellate counsel's diligence, the *Anders* brief is incomplete. As we have recently clarified, an *Anders* brief in a case involving an appeal waiver must, among other things, examine "the *scope* of an appeal waiver and determin[e] whether there are non-frivolous issues for appeal regarding sentencing components arguably not covered by the waiver." *United States v. Reyes-Arzate*, 91

4

F.4th 616, 622 (2d Cir. 2024). Here, Arguedas's conditions of supervised release fall outside the scope of the appeal waiver and therefore appellate counsel's failure to address those conditions renders the *Anders* brief incomplete.

We hold that such a deficiency in the *Anders* brief is not necessarily fatal to a lawyer's motion to withdraw: we may nevertheless grant counsel's motion to be relieved when a deficiency in the *Anders* brief is harmless. Where counsel fails to address aspects of the sentence not covered by the appeal waiver, that deficiency: (1) is harmless when we can determine from the record that there are no non-frivolous issues to raise regarding the aspects of the sentence not covered by the appeal waiver; or (2) can be cured if counsel represents that he has discussed with the defendant the potential benefits and risks of challenging those aspects of the sentence that fall outside the appeal waiver, and that the defendant has authorized counsel not to pursue an appeal with regard to those matters.

Applying the harmlessness analysis here, we conclude that there are no non-frivolous issues with respect to the mandatory, standard, and five of the seven special conditions of supervised release, and that appellate counsel's failure to address those conditions in the *Anders* brief is therefore harmless. However, the two remaining special conditions concerning financial disclosure and new lines of credit potentially raise non-frivolous issues for appeal. We thus cannot conclude that appellate counsel's failure to address those two conditions is harmless. Accordingly, we defer decision on the motions and order the parties to file supplemental briefing.

## I. Background

### A. Criminal Conduct and Subsequent Indictment

From at least 2011 through March 2020, Arguedas was a part of the Black Stone Gorilla Gang ("BSGG"), a subset of the Bloods gang that operates in the New York City metropolitan area as well as New York State jails and prisons. BSGG engaged in, among other things, acts involving narcotics trafficking, bank fraud, wire fraud, murder, assault, and robbery. Arguedas was not merely a member of the BSGG; he also held several leadership roles and eventually served as a "Godfather" between 2017 and 2020, which is the highest position in the organization outside prison. As a Godfather, Arguedas had the power to initiate new members into BSGG, discipline BSGG members, and order and authorize violent acts against rival gang members.

Throughout his involvement with the BSGG, Arguedas took numerous acts in furtherance of the organization's goals. For example, he assaulted a number of people, commissioned or assisted violent acts against rival gang members, and participated in BSGG's narcotics trafficking scheme. He also murdered a rival drug dealer, Gary Rodriguez, in a dispute over drug territory.

On March 30, 2021, a grand jury returned a superseding indictment that charged Arguedas and other BSGG members with multiple counts arising from their conduct in the BSGG. Arguedas was charged with ten counts:

6

- Count One: racketeering conspiracy, in violation of 18 U.S.C. § 1962(d);

- Count Two: murder in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(1) and 2;

- Count Three: murder through the use of a firearm, in violation of 18 U.S.C. §§ 924(j) and 2;

- Count Four: conspiracy to commit murder in aid of racketeering and conspiracy to assault with a dangerous weapon in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(5) and (a)(6);

- Count Five: assault with a dangerous weapon and attempted murder in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(3), 1959(a)(5), and 2;

- Count Six: use of a firearm in furtherance of assault with a dangerous weapon and attempted murder, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), (iii), and 2;

- Count Seven: attempted assault with a dangerous weapon in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(6) and 2;

- Count Eight: assault with a dangerous weapon in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(3) and 2;

- Count Nine: participation in a narcotics conspiracy, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), (b)(1)(C), and (b)(1)(D); and

7

- Count Ten: possession of firearms in furtherance of a narcotics conspiracy, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2.

## B. Guilty Plea

Arguedas and the government negotiated a plea agreement to resolve his charges. Arguedas would plead guilty to Counts One (racketeering conspiracy), Nine (narcotics conspiracy), and Ten (possession of a firearm in furtherance of a narcotics conspiracy). Arguedas would also admit that he participated in the murder of Rodriguez in furtherance of the BSGG's goals. In exchange, the government would dismiss the remaining counts against Arguedas and refrain from further prosecution of Arguedas for certain crimes.

The parties stipulated in the plea agreement that the advisory Guidelines range was a term of imprisonment of 420 months to life, with a statutory minimum of 180 months of imprisonment. The stipulated Guidelines range was based on a total offense level of 40 and a criminal history category of VI. In calculating the total offense level, the parties used the following two predicate offenses: the murder of Rodriguez and drug trafficking. The parties classified Arguedas as a career offender under U.S.S.G § 4B1.1 because he had two prior state felony convictions for attempted robbery. Arguedas's status as a career offender did not affect his total offense level, but it did increase his criminal history category from V to VI.

The plea agreement also included an appeal waiver. Arguedas agreed to forgo his right to bring a direct appeal or collateral challenge

"of any sentence within or below the Stipulated Guidelines Range," "any term of supervised release that is less than or equal to the statutory maximum," "any fine that is less than or equal to $10,000,000," and "any special assessment that is less than or equal to $300." App'x at 96–97. The government reciprocally agreed to forgo any appeal of a "sentence within or above the Stipulated Guidelines Range," and any appeal or collateral challenge to a "fine that is greater than or equal to $50,000." *Id.* at 97.

On February 8, 2022, Arguedas appeared before a magistrate judge (Debra C. Freeman, *Magistrate Judge*) and, pursuant to the plea agreement, pled guilty to Counts One, Nine, and Ten. During the hearing, the magistrate judge informed Arguedas of his rights and the effects of his guilty plea. For instance, the magistrate judge reviewed with Arguedas the rights that he would waive by pleading guilty and the contents of the plea agreement, specifically confirming with Arguedas that he discussed the plea agreement with his counsel and that he understood the appeal waiver. The magistrate judge also reviewed with Arguedas the statutory penalties associated with the plea including the mandatory minimum prison term of fifteen years (five of which must be served consecutively to any other term of imprisonment imposed), the mandatory minimum term of supervised release of five years, and a possible order of restitution to any victims of the crimes. And upon prompting from the magistrate judge, the government explained the elements of Counts One, Nine, and Ten. Furthermore, the magistrate judge canvassed Arguedas to ensure that he entered the guilty plea competently and voluntarily

9

and that there was a factual basis for the plea. Based on the colloquy with Arguedas, the magistrate judge recommended that the district judge accept Arguedas's guilty plea. The district judge (Jed S. Rakoff, *District Judge*) accepted the guilty plea on February 18, 2022.

### C. Sentencing

Prior to sentencing, the U.S. Probation Office prepared the Presentence Investigation Report ("PSR"). Consistent with the plea agreement, the PSR determined the applicable Guidelines range to be a term of imprisonment of 420 months to life, based on a total offense level of 40 and a criminal history category of VI. The PSR's calculation of the Guidelines range was the same as that of the plea agreement, except that the PSR factored in a prior conviction that the plea agreement did not. That additional conviction, however, had no impact on the resulting Guidelines range. The PSR also documented Arguedas's background and characteristics including his struggles with mental health and his history of substance abuse. The government did not submit any objections to the PSR. Arguedas objected to the inclusion of certain facts in the PSR but did not challenge the accuracy of those facts.

Additionally, included with the PSR was the Probation Office's sentencing recommendation in which it listed the mandatory and standard conditions of supervised release as well as several proposed, special conditions of supervised release. The Probation Office proposed the following special conditions:

- Special Condition #1: Arguedas must participate in an outpatient substance abuse treatment program;

- Special Condition #2: Arguedas must provide any requested financial information to the probation officer;

- Special Condition #3: Arguedas must refrain from opening new lines of credit without his probation officer's approval, unless he complies with the installment payment schedule for any restitution or fine;

- Special Condition #4: Arguedas must participate in an outpatient mental health treatment program;

- Special Condition #5: Arguedas must submit himself to a reasonable search of his person, property, residence, vehicle, papers, computer, and any other electronic devices;

- Special Condition #6: Arguedas must not associate with any gang members, particularly members of the Bloods gang, or frequent neighborhoods known to be controlled by the Bloods gang; and

- Special Condition #7: Arguedas must be supervised by the district of his residence.

On May 24, 2022, the district court (Jesse M. Furman, *District Judge*)[2] sentenced Arguedas. At sentencing, Arguedas confirmed that he had reviewed and discussed the PSR with his counsel. Neither Arguedas nor the government disputed the accuracy of the facts or

---

[2] After the change of plea proceeding, the case was reassigned to Judge Furman.

11

the Guidelines calculations set forth in the PSR. The district court subsequently adopted the facts and the Guidelines calculations in the PSR.

After remarks from the parties (including from Arguedas himself), the district court addressed the sentencing factors under 18 U.S.C. § 3553(a). The district court explained that "a substantial sentence is warranted" because Arguedas's crimes and conduct—murder, attempted murder, and other "really appalling acts of violence"—"are among the most despicable there are." App'x at 128–29. The district court pointed to videos in which Arguedas documented his violent acts, stating that those videos "are deeply disturbing" and suggest that Arguedas "is a danger to society." *Id.* at 129. The district court also discussed Arguedas's "lengthy and disturbing criminal history," which includes "multiple convictions for prior acts of violence" and offenses committed while on parole or probation. *Id.* Weighing against the severity of Arguedas's conduct and criminal history, however, were several mitigating factors identified by the district court such as Arguedas's difficult upbringing and the time that Arguedas had already spent in custody during the COVID-19 pandemic, which made the conditions of confinement harsher than normal.

Relying on the reasons described above, the district court imposed a slightly below-Guidelines sentence of 390 months of imprisonment, to be followed by three years of supervised release, and a special assessment of $300. In connection with the term of supervised release, the district court imposed the mandatory,

12

standard, and special conditions of supervised release proposed by the Probation Office.  The district court declined to impose a fine, finding that Arguedas was unable to pay one.  The government did not seek forfeiture.  Additionally, because the government had not been able to reach any victims by the time of sentencing, the district court deferred entry of an order of restitution for the statutory period of ninety days under 18 U.S.C. § 3664(d)(5) and directed the government to submit a proposed order of restitution in the event it determined that restitution was appropriate.  The government, however, never sought an order of restitution after sentencing, and the district court never imposed one.

The district court entered judgment on May 25, 2022.  The written judgment accurately reflected the district court's orally imposed sentence except with respect to the term of supervised release: the written judgment imposed the mandatory minimum five years of supervised release as opposed to the three years orally imposed by the district court at sentencing.

### D. Appeal

On June 17, 2022, Arguedas filed a *pro se* notice of appeal, even though he was still represented by counsel.  In his notice, Arguedas argued that he had received ineffective assistance of counsel and that his guilty plea had not been knowingly, willingly, and intelligently made.  He noted that he attempted to file a notice of appeal within the deadline to file an appeal under Federal Rule of Appellate Procedure 4(b), but a lockdown at his prison prevented him from doing so.

13

On December 27, 2022, defense counsel, who represented Arguedas before the district court, moved to be relieved as counsel.[3] Defense counsel argued that such relief was necessary because Arguedas's allegations in his notice of appeal—that he had received ineffective assistance of counsel and that his guilty plea was improper—presented a conflict of interest. This Court granted the motion on January 6, 2023, and directed Arguedas to file an application for appointment of counsel pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A, if he wished to be represented by counsel in this appeal. After Arguedas returned his application, this Court appointed appellate counsel on January 26, 2023.

On June 14, 2023, appellate counsel moved to be relieved as counsel and for the appointment of substitute counsel. Appellate counsel explained that he had notified Arguedas of his intent to submit a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), based on his belief that no non-frivolous appellate issues existed. Appellate counsel further explained that he informed Arguedas of his "right to: (1) do nothing; (2) request that the Court provide [him] with substitute counsel; (3) hire a private attorney; (4) submit *pro se* papers in support of [his] appeal; or (5) voluntarily withdraw the appeal." Dkt. 83, at 2–3. Appellate counsel conveyed Arguedas's desire for substitute counsel to be appointed.

---

[3] Before that motion, defense counsel filed multiple motions to be relieved as counsel, the first of which was filed on August 23, 2022. This Court denied each of those motions for noncompliance with Local Rule 4.1(d)(3).

On June 22, 2023, this Court denied appellate counsel's motion due to the lack of an *Anders* brief. Later on the same day, appellate counsel renewed his request for the appointment of substitute counsel and moved, in the alternative, for an extension of the briefing deadline. Appellate counsel stated in the motion that he spoke to Arguedas the day before and that Arguedas reiterated that "he does not wish for [appellate counsel] to continue representing him." Dkt. 88, at 2. On June 23, 2023, this Court granted appellate counsel's request for an extension of the briefing schedule.

On July 13, 2023, appellate counsel filed an *Anders* brief accompanied by a motion to be relieved as counsel and for appointment of substitute counsel. In the *Anders* brief, appellate counsel asserted that "there are no non-frivolous grounds for an appeal of Arguedas's conviction under Counts One, Nine, and/or Ten." Dkt. 96, at 20. After describing the plea proceeding, appellate counsel argued that the proceeding complied with Federal Rule of Criminal Procedure 11(b)(1), that Arguedas's plea was voluntarily made, and that there was a sufficient factual basis for Arguedas's guilty plea. Appellate counsel further argued that Arguedas knowingly and voluntarily waived his right to appeal his sentence under the plea agreement. And even if Arguedas could challenge his sentence, appellate counsel represented that he was able to identify only one viable issue with respect to the sentence, which concerned the application of the career offender designation for the Guidelines range calculations. But appellate counsel stated that even if the career offender designation did not apply to Arguedas, the Guidelines range

15

would remain unchanged. Finally, appellate counsel noted that a successful challenge to Arguedas's conviction "would give rise to 'unacceptable risk of a harsher sentence,'" given that he would be subject to prosecution for the other crimes charged in the superseding indictment. Dkt. 96, at 26 (quoting *United States v. Ibrahim*, 62 F.3d 72, 74 (2d Cir. 1995)).

On October 12, 2023, the government moved to dismiss the appeal, arguing that the appeal waiver is enforceable and bars Arguedas's appeal. In the alternative, the government moved for summary affirmance of the conviction based on its belief that there are no non-frivolous issues that can be raised on appeal. Appellate counsel opposed the government's motion, contending that dismissal or summary affirmance are premature in light of Arguedas's pending motion to appoint substitute counsel.

In a supplemental filing on December 5, 2023, appellate counsel stated that during a recent phone call, "Arguedas confirmed that if this Court does not grant his request for substitute counsel he will wish to proceed *pro se* in lieu of having his appeal dismissed." Dkt. 138, at 2 (emphasis omitted).

## II.    Discussion

Pending before us now are (1) appellate counsel's motion to be relieved and to appoint substitute counsel, and (2) the government's motion to dismiss or, in the alternative, for summary affirmance. For the reasons below, we defer decision on the motions and order supplemental briefing from the parties.

16

### A. The Sufficiency of the *Anders* Brief

"The well-established *Anders* procedure governs requests by defense counsel to withdraw from an appeal if, after 'conscientious examination' of the record, she determines the appeal 'to be wholly frivolous.'" *Reyes-Arzate*, 91 F.4th at 620 (quoting *Anders*, 386 U.S. at 744). Under this procedure, counsel must first file a motion to be relieved accompanied by an *Anders* brief that discusses "anything in the record that might arguably support the appeal." *Id.* at 621 (quoting *Anders*, 386 U.S. at 744). Afterwards, the defendant may "'raise any points that he chooses' in a *pro se* appellate brief." *United States v. Fleming*, 5 F.4th 189, 192 (2d Cir. 2021) (quoting *Anders*, 386 U.S. at 744).

Armed with "a properly prepared *Anders* brief," *Reyes-Arzate*, 91 F.4th at 621 (quoting *United States v. Kosic*, 944 F.3d 448, 451 (2d Cir. 2019)), we then conduct "a full examination" of the proceedings below "to decide whether the case is wholly frivolous," *id.* (quoting *Anders*, 386 U.S. at 744). Only after "we are satisfied that 'counsel has diligently searched the record for any arguably meritorious issue in support of his client's appeal,' and that counsel's characterization of the appeal as 'frivolous is, in fact, legally correct,'" may we grant a counsel's motion to be relieved. *Id.* (quoting *United States v. 777 Greene Ave.*, 609 F.3d 94, 99 (2d Cir. 2010)).

In cases involving an appeal waiver, such as here, we have imposed specific requirements for an adequate *Anders* brief. It is not enough for counsel to address only the enforceability of an appeal

waiver because "no appeal waiver, even if valid, 'serves as an absolute bar to all appellate claims.'" *Reyes-Arzate*, 91 F.4th at 622 (quoting *Garza v. Idaho*, 586 U.S. 232, 238 (2019)). "[A] 'valid and enforceable appeal waiver . . . only precludes challenges that fall within its scope.'" *Id.* (quoting *Garza*, 586 U.S. at 238). Thus, to adequately assess whether any non-frivolous issues exist in such cases, the *Anders* brief must address the following "limited issues":

> (1) [W]hether defendant's plea and waiver of appellate rights were knowing, voluntary, and competent; or (2) whether it would be against the defendant's interest to contest his plea; and (3) any issues implicating a defendant's constitutional or statutory rights that either cannot be waived, or cannot be considered waived by the defendant in light of the particular circumstances.

*Id.* at 621 (quoting *United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000) (citations omitted)). Defense counsel's obligation to address the third issue "includes examining the *scope* of an appeal waiver and determining whether there are non-frivolous issues for appeal regarding sentencing components arguably not covered by the waiver." *Id.* at 622. In other words, "when defense counsel determines that an appeal waiver covers only part of a sentence, counsel must separately address the procedural and substantive reasonableness of the non-covered components." *Id.*

Here, appellate counsel thoroughly addressed in the *Anders* brief the validity of Arguedas's guilty plea, the enforceability of the appeal waiver, any non-frivolous issues with respect to Arguedas's

18

term of imprisonment, and whether it is in Arguedas's best interest to challenge the conviction. And upon a careful review of the record, we agree with appellate counsel that Arguedas entered into his plea knowingly, voluntarily, and competently, and that the appeal waiver is valid and enforceable. Because the appeal waiver is valid, Arguedas is barred from challenging his term of imprisonment, his term of supervised release, and the special assessment, all of which fall within the scope of the appeal waiver.

The *Anders* brief, however, is incomplete because it fails to address components of the sentence that fall outside the appeal waiver. The district court imposed mandatory, standard, and special conditions of supervised release, none of which are mentioned in the *Anders* brief. Under the appeal waiver, Arguedas waived his right to challenge "any *term* of supervised release that is less than or equal to the statutory maximum," App'x at 97 (emphasis added), but he did not waive his right to appeal the *conditions* of supervised release. *See United States v. Burden*, 860 F.3d 45, 54 (2d Cir. 2017) ("[W]hen an appeal waiver is silent regarding a specific aspect of a sentence, this Court generally finds that the appeal waiver does not foreclose challenges to that aspect of the sentence." (internal quotation marks omitted)). Consequently, the absence of discussion of the conditions of supervised release renders the *Anders* brief incomplete. *See Reyes-Arzate*, 91 F.4th at 622–23 (concluding that the *Anders* brief was deficient because it did not address aspects of the sentence, such as the conditions of supervised release, that fell outside of the appeal waiver).

19

## B. Harmlessness

Our finding that the *Anders* brief is incomplete does not end our inquiry. Such a deficiency in the *Anders* brief is not necessarily fatal to a lawyer's motion to withdraw. We may nevertheless grant counsel's motion to be relieved when the gap in an *Anders* brief is harmless. Where an *Anders* brief fails to address aspects of the sentence not covered by the appeal waiver, that omission: (1) is harmless when we can determine from the record that there are no non-frivolous issues to raise regarding the aspects of the sentence not covered by the appeal waiver; or (2) can be cured if counsel represents that he has discussed with the defendant the potential benefits and risks of challenging those aspects of the sentence that fall outside the appeal waiver, and that the defendant has authorized counsel not to pursue an appeal with regard to those matters.

It is often the case that a defendant has no desire to challenge particular portions of his sentence or conviction. Most criminal appeals following guilty pleas focus exclusively on the length of the prison sentence imposed, leaving the remainder of the judgment untouched. This is unsurprising, given that incarceration is usually the greatest imposition on a defendant's liberty that stems from a criminal sentence. So it is possible that a particular defendant may have no interest in challenging aspects of his sentence that are not covered by an appeal waiver. In such circumstances, counsel who submits an *Anders* brief may indicate that he has discussed with the defendant the potential benefits and risks of challenging those specified aspects of the sentence that fall outside the appeal waiver,

and that the defendant has authorized counsel not to pursue an appeal with regard to those matters. An *Anders* brief that includes such a representation would be sufficient and without defect.

In this case, however, appellate counsel has not yet had an opportunity to determine, in line with our direction above, whether Arguedas wishes to challenge his conditions of supervised release. We thus consider whether the omission of this discussion from the *Anders* brief can be disregarded as harmless.

We begin by explaining why review for harmlessness is appropriate here. We have previously held that "we may not independently determine the merits of an appeal, absent a properly prepared *Anders* brief." *United States v. Burnett*, 989 F.2d 100, 104 (2d Cir. 1993). This is because the *Anders* procedure is meant "to vindicate the [defendant's] constitutional right to appellate counsel." *Smith v. Robbins*, 528 U.S. 259, 273 (2000). Without a proper *Anders* brief, there is no guarantee that a defendant was afforded "a diligent and thorough review of the record and an identification of any arguable issues revealed by that review." *United States v. Whitley*, 503 F.3d 74, 77 (2d Cir. 2007) (quoting *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 439 (1988)); *see also Burnett*, 989 F.2d at 104 ("Acceptance of a non-conforming *Anders* brief is akin to a constructive denial of counsel."). Judicial review of the merits of the case "is no substitute for [the sort of] adversary representation" promised under the Sixth Amendment. *United States v. Zuluaga*, 981 F.2d 74, 75 (2d Cir. 1992).

21

We have applied that principle—that we may not determine the merits of an appeal without an adequate *Anders* brief—in a series of cases where counsel submitted wholly deficient *Anders* briefs. For example, in *United States v. Zuluaga*, counsel's *Anders* brief was devoid of any analysis—the argument section contained three conclusory sentences. 981 F.2d at 75. Similarly, in *United States v. Burnett*, counsel submitted an "*Anders* brief consisting solely of one and a half pages of argument" (despite there being 787 pages of trial transcripts) that failed to address critical issues raised during trial. 989 F.2d at 104. In *United States v. Whitley*, counsel's *Anders* briefs failed to address the reasonableness of the defendants' sentences. 503 F.3d at 75. And in *United States v. Urena*, counsel failed to "identify possible issues for appeal []or discuss the sentencing transcript to demonstrate why no such issue exists," providing only "conclusory assertions." 23 F.3d 707, 708–09 (2d Cir. 1994). Counsel in *Urena* also failed to include sentencing transcripts and the plea agreement in the appendices to their briefs, further demonstrating that counsel did not "search the record with care." *Id.* at 708.

In contrast, appellate counsel's *Anders* brief here is far from wholly deficient and therefore does not raise the same concerns regarding a defendant's right to counsel. Appellate counsel's *Anders* brief rigorously examines the change of plea proceeding, the term of imprisonment, and the appeal waiver. Appellate counsel explains why no meritorious issues exist, often providing citations to the record in support of his explanation. The brief also assesses whether it is in the best interest of Arguedas to proceed with an appeal. Along

22

with the brief, appellate counsel submitted an appendix, which includes relevant transcripts from district court proceedings, the plea agreement, and the judgment. Appellate counsel's only mistake is his failure to address Arguedas's conditions of supervised release, which amounts to merely a minor deficiency in this particular *Anders* brief.

In short, the brief was "properly prepared" though incomplete. It is clear from appellate counsel's submissions that he conscientiously scoured the record for any non-frivolous issues for appeal. Because the brief was diligently prepared, this is not a case in which a defective *Anders* brief "amounts to a constructive denial of counsel." *United States v. Zuluaga*, 981 F.2d 74, 75 (2d Cir. 1992). Only the "[a]ctual or constructive denial of the assistance of counsel *altogether* is legally presumed to result in prejudice." *Strickland v. Washington*, 466 U.S. 668, 692 (1984) (emphasis added). When a defendant receives the assistance of counsel but that assistance may have been deficient—as, by analogy, the incomplete *Anders* brief was here—we consider whether "any deficiencies in counsel's performance [were] prejudicial to the defense" before concluding the assistance was ineffective. *Id.* In accordance with that framework, we find review for harmlessness appropriate here and turn to determine whether there are any non-frivolous issues to raise related to the conditions of supervised release.

We generally "review the imposition of conditions of supervised release for abuse of discretion," *United States v. Eaglin*, 913 F.3d 88, 94 (2d Cir. 2019). "When[, as here,] the defendant does not object to the conditions," we review for plain error. *United States v.*

23

*Green*, 618 F.3d 120, 122 (2d Cir. 2010); *see also* Fed. R. Crim. P. 52(b). "Under plain error review, an appellant must demonstrate that '(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Napout*, 963 F.3d 163, 183 (2d Cir. 2020) (quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010) (brackets and internal quotation marks omitted)).

We have applied "a 'relaxed' form of plain error review in those rare cases in which the defendant lacked sufficient prior notice that a particular condition of supervised release might be imposed." *United States v. Matta*, 777 F.3d 116, 121 (2d Cir. 2015). For example, we have applied the relaxed plain error standard where the defendant first learned of the challenged condition of supervised release from the written judgment. *See id*. at 122. We have also applied that standard when the defendant was aware of the challenged condition from the PSR, but the district court's oral pronouncement of the condition led the defendant to believe that a different condition would be imposed than the one described in the PSR and then the written judgment. *See United States v. Washington*, 904 F.3d 204, 207–08 (2d Cir. 2018).

That standard is inappropriate here because Arguedas had sufficient notice of the conditions of supervised release from the district court's oral pronouncement but failed to object to them. Indeed, here Arguedas was alerted of the potential imposition of

24

these conditions even before the hearing began. The PSR listed the mandatory, standard, and special conditions that were later imposed by the district court. At sentencing, Arguedas confirmed that he reviewed and discussed the PSR with his counsel. And when the district court orally imposed those conditions, its recitation of the conditions did not deviate from the PSR: it described the mandatory conditions of supervised release just as they appear in the PSR, and it referenced the pages of the PSR with the standard and special conditions of supervised release, effectively incorporating them by reference. *Cf. United States v. Rosado*, 109 F.4th 120, 124 & n.2 (2d Cir. 2024) (holding the district court did not sufficiently incorporate special conditions in the PSR at sentencing where: (i) it did not explicitly refer to the PSR; and (ii) the conditions as orally pronounced were materially different). The conditions of supervised release set forth in the written judgment are consistent with the PSR and the district court's oral pronouncement.

"[O]ur caselaw is clear that traditional plain-error review applies when, as here, a defendant has notice that a condition of supervised release will be imposed and fails to object." *United States v. Lewis*, 125 F.4th 69, 75 (2d Cir. 2025). Accordingly, relaxation of the plain error standard is not warranted. *See also United States v. Dupes*, 513 F.3d 338, 343 n.2 (2d Cir. 2008). We therefore review the district court's imposition of the conditions of supervised release under the traditional plain error standard.

"Under 18 U.S.C. § 3583(d), the imposition of certain conditions of supervised release is mandatory, but district courts also have

25

discretion to impose other, non-mandatory conditions of supervised release, which are commonly referred to as 'special conditions.'" *United States v. Kunz*, 68 F.4th 748, 758 (2d Cir. 2023) (quoting *United States v. Browder*, 866 F.3d 504, 510 (2d Cir. 2017)). "That discretion is constrained by 18 U.S.C. § 3583(d)(1) and Sentencing Guidelines § 5D1.3(b), which each require, among other things, that the special conditions be 'reasonably related' to familiar sentencing factors," "involve 'no greater deprivation of liberty than is reasonably necessary' to achieve those purposes," and "be 'consistent with any pertinent policy statements issued by the Sentencing Commission.'" *Id.* (quoting 18 U.S.C. § 3583(d)(2)-(3) and U.S.S.G. § 5D1.3(b)). Sentencing factors include "'the nature and circumstances of the offense and the history and characteristics of the defendant'; 'the need for the sentence imposed to afford adequate deterrence to criminal conduct'; 'the need to protect the public from further crimes of the defendant'; and 'the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.'" *United States v. Betts*, 886 F.3d 198, 202 (2d Cir. 2018) (quoting U.S.S.G. § 5D1.3(b)).

Additionally, "[a] district court is required to make an individualized assessment when determining whether to impose a special condition of supervised release, and to state on the record the reason for imposing it; the failure to do so is error." *Id.* "In the absence of such an explanation, we may uphold the condition imposed only if the district court's reasoning is 'self-evident in the

26

record.'" *Id.* (quoting *United States v. Balon*, 384 F.3d 38, 41 n.1 (2d Cir. 2004)).

Applying the harmlessness analysis here, we conclude that there are no non-frivolous issues with respect to the mandatory, standard, and five of the seven special conditions of supervised release (Special Conditions #1, #4, #5, #6, and #7). However, the two remaining special conditions concerning financial disclosure and new lines of credit (Special Conditions #2 and #3, respectively) potentially raise non-frivolous issues.

### i.    Mandatory and Standard Conditions of Supervised Release

We first hold that the district court did not err, let alone plainly err, by imposing the mandatory and standard conditions of supervised release. Those conditions "are basic administrative requirements, generally imposed by sentencing courts, and plainly appropriate to implement supervised release." *United States v. Jacques*, 321 F.3d 255, 263 (2d Cir. 2003). Appellate counsel's failure to address the mandatory and standard conditions of supervised release in the *Anders* brief is therefore harmless.

### ii.    Special Conditions #1, #4, #5, #6, and #7

Next, we discern no error in the district court's imposition of the special conditions of supervised release pertaining to substance abuse treatment, mental health treatment, search, non-association with gang members, and supervision by the district of residence.

27

Although the district court did not articulate its reasons for imposing these special conditions, we find that its reasons are "self-evident in the record," *Betts*, 886 F.3d at 202, and that those conditions are reasonably related to the pertinent sentencing factors. We address each of those special conditions below.

The district court imposed Special Conditions #1 and #4, which require Arguedas to submit to substance abuse treatment and mental health treatment. Those conditions are reasonably related to Arguedas's characteristics in light of his extensive history of substance abuse and struggles with mental health. *See, e.g.*, *United States v. Chaklader*, 232 F.3d 343, 348 (2d Cir. 2000) (upholding substance abuse program condition where defendant had substance abuse history).

The district court also imposed Special Condition #5, mandating Arguedas to submit to a search by the probation officer of his person, property, residence, vehicle, papers, computer, and any other electronic devices, if there is reasonable suspicion that Arguedas violated a condition of supervised release or committed unlawful acts. That condition is reasonably related to the nature of the offense, and it serves the goals of adequate deterrence and protecting the public from further crimes of the defendant. During sentencing, the district court expressed its concern with Arguedas's criminal history—characterizing it as "lengthy and disturbing"—and with the fact that the crimes for which Arguedas was being sentenced consisted of "appalling acts of violence." App'x at 129. Those characterizations are well-founded in the record, which shows that

(1) Arguedas's criminal history spanned over a decade and involved, *inter alia*, assaults, robberies, and possession of a dangerous weapon; and (2) Arguedas's conduct leading up to this conviction involved murder, attempted murder, and numerous violent assaults, as well as drug trafficking and possession of firearms.

Given the severity of Arguedas's conduct and his penchant for re-offending, the need to deter and protect the public is especially acute. These reasons alone justify imposition of Special Condition #5 in its entirety. Lest there be any doubt about the appropriateness of this condition, including the electronic search provision, the record reveals that Arguedas used electronic devices to document a number of his assaults and to commission violent acts against rival gang members. To be clear, we do not suggest that such record evidence is required for a district court to impose an electronic search condition; we merely describe that evidence to illustrate the district court's well-founded concern about the use of electronic devices. The district court therefore did not err by imposing the search condition.

Further, the district court imposed Special Condition #6, which prohibits Arguedas from associating with any gang members, particularly members of the Bloods gang, or frequenting neighborhoods known to be controlled by the Bloods gang. The district court's reason for imposing such a condition is self-evident based on the record. Arguedas admitted during the plea proceeding that he was "associated" with the BSGG, a subset of the Bloods gang, and there was ample evidence that his association with the BSGG was directly related to the crimes of conviction. *See United States v. Bolin*,

976 F.3d 202, 211–12 (2d Cir. 2020) (finding a special condition prohibiting a defendant from associating with white supremacists was reasonably related to sentencing objectives, where the defendant's online activity praising white supremacy eventually led to the defendant making a fraudulent representation to government agents); *cf. United States v. Sims*, 92 F.4th 115, 126–29 (2d Cir. 2024) (concluding that it was not self-evident from the record why the district court imposed a condition prohibiting a defendant from associating with any gang members, where the defendant had never been charged with a crime related to any gang).

The district court imposed Special Condition #7, which requires Arguedas to be supervised by the district of his residence. This condition is "clearly [a] 'basic administrative requirement' that [is] 'necessary to supervised release'" and "provide[s] essential details for [the defendant's] compliance with the enumerated standard conditions," *United States v. Thomas*, 299 F.3d 150, 154 (2d Cir. 2002) (alteration omitted) (quoting *United States v. Truscello*, 168 F.3d 61, 63, 64 (2d Cir. 1999)), which are "are presumed suitable in all cases," *United States v. Asuncion-Pimental*, 290 F.3d 91, 94 (2d Cir. 2002). The district court therefore did not err by imposing Special Condition #7.

In sum, appellate counsel's failure to address Special Conditions #1, #4, #5, #6, and #7, is harmless because there are no non-frivolous issues stemming from those conditions.

30

### iii. Special Conditions #2 and #3

Finally, we conclude that the remaining two special conditions of supervised release, Special Conditions #2 and #3, potentially raise non-frivolous issues for appeal. Special Condition #2 requires Arguedas to "provide the probation officer with access to any requested financial information." App'x at 141. The Sentencing Guidelines recommend the financial disclosure condition when the district court orders restitution, forfeiture, or payment of a fine. U.S.S.G. § 5D1.3(d)(3). Special Condition #3 prohibits Arguedas from "incur[ring] new credit charges or open[ing] additional lines of credit without the approval of the probation officer unless [he is] in compliance with the installment payment schedule." App'x at 141. The Sentencing Guidelines recommend this condition when the district court imposes restitution or a fine. U.S.S.G. § 5D1.3(d)(2).

Here, the district court did not impose any of the financial obligations described above that warrant Special Conditions #2 and #3. The district court did not impose a fine, and the government did not seek forfeiture in this case. Additionally, the district court deferred entry of an order of restitution and directed the government to file a proposed order of restitution if the government determined that restitution was appropriate. But the government never filed a proposed order, and the district court ultimately did not impose an order of restitution. It is not clear whether the district court intended to impose Special Conditions #2 and #3 given the lack of a restitution order.

Because the district court did not impose any of the financial obligations that typically demand special conditions concerning the defendant's financial fitness, Special Conditions #2 and #3 potentially raise non-frivolous issues for appeal. We therefore cannot conclude that appellate counsel's failure to address these conditions in the *Anders* brief is harmless. Accordingly, supplemental briefing is required, and we defer decision on appellate counsel's motion to withdraw and to appoint substitute counsel, and the government's motion to dismiss or, in the alternative, for summary affirmance.

## III. Conclusion

In sum, we hold as follows:

1. Appellate counsel's *Anders* brief is incomplete because it fails to address components of the sentence that fall outside the appeal waiver, specifically Arguedas's conditions of supervised release.

2. We may nevertheless grant counsel's motion to be relieved when a deficiency in the *Anders* brief is harmless. Where counsel fails to address aspects of the sentence not covered by the appeal waiver, that deficiency: (1) is harmless when we can determine from the record that there are no non-frivolous issues to raise regarding the aspects of the sentence not covered by the appeal waiver; or (2) can be cured if counsel represents that he has discussed with the defendant the potential benefits and risks of challenging those aspects of the sentence that fall outside the appeal waiver, and that the defendant has authorized counsel not to pursue an appeal with regard to those matters.

3. Applying the harmlessness analysis here, we conclude that there are no non-frivolous issues with respect to the mandatory, standard, and five of the seven special conditions of supervised release, and that appellate counsel's failure to address those conditions in the *Anders* brief is therefore harmless. However, the two remaining special conditions concerning financial disclosure and new lines of credit potentially raise non-frivolous issues for appeal. Thus, we cannot conclude that appellate counsel's failure to address those two conditions is harmless.

Accordingly, we DEFER decision on the motions. Within 30 days of this opinion, appellate counsel must file a supplemental brief addressing whether Arguedas wishes to appeal Special Conditions #2 and #3. If Arguedas does not wish to appeal those conditions, appellate counsel may indicate that he has discussed with Arguedas the potential benefits and risks of challenging those special conditions and that Arguedas has authorized counsel not to pursue an appeal with regard to those matters. But if Arguedas does wish to proceed with such an appeal, counsel must also address whether those conditions raise any non-frivolous issues for appeal. Appellate counsel's supplemental brief may address any other issues he deems relevant.

Within 30 days of the filing of appellate counsel's supplemental briefing, the government is directed to submit a response. If appellate counsel represents that Arguedas does wish to appeal Special Conditions #2 and #3 and argues that those conditions raise non-

frivolous issues for appeal, the government may respond by addressing those conditions and stating whether remand to the district court is necessary. After appellate counsel and the government file supplemental briefing, both the *Anders* motion and the government's motion to dismiss and/or for summary affirmance will be decided by this panel.